IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 07-cv-02319-CMA-BNB

ALLEN BERGERUD,

Plaintiff,

v.

JOSEPH FORTUNATO, D.O.,
KATHY RITTENHOUSE, N.P., and
BRIAN WEBSTER, P.A.,

Defendants.

_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

This matter is before me on the defendants' **Motion to Dismiss** [Doc. #6] (the "Motion"). I respectfully RECOMMEND that the Motion be GRANTED IN PART and DENIED IN PART.

**I. STANDARD OF REVIEW**

The plaintiff is proceeding *pro se*, and I must liberally construe his pleadings. Haines v. Kerner, 404 U.S. 519, 520-21 (1972). Nevertheless, I cannot act as advocate for a *pro se* litigant, who must comply with the fundamental requirements of the Federal Rules of Civil Procedure. Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).

In ruling on a motion to dismiss, the court must accept the plaintiff's well-pleaded allegations as true and must construe all reasonable inferences in favor of the plaintiff. City of Los Angeles v. Preferred Communications, Inc., 476 U.S. 488, 493 (1986); Mitchell v. King, 537 F.2d 385, 386 (10th Cir. 1976). The complaint must contain specific allegations sufficient to establish that it plausibly supports a claim for relief. Alvarado v. KOB-TV, L.L.C., 493 F.3d

1210, 1215 n.2 (10th Cir. 2007). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Davis v. Scherer, 468 U.S. 183 (1984).

## II. BACKGROUND

The plaintiff filed his Prisoner Complaint on November 5, 2007 [Doc. #1] (the "Complaint"). The Complaint's "Nature of the Case" section contains the following allegations:

1. The plaintiff was incarcerated in the Weld County Jail from April 2, 2002, until November 21, 2005. He was then transferred to the Colorado Department of Corrections ("DOC"). At the time of his transfer, the plaintiff was receiving five daily shots of Humalog and Lantus insulin for his type I diabetes. *Complaint*, p. 3.

2. On November 21, 2005, the medical staff at the Denver Reception Diagnostic Center changed the plaintiff's insulin to NPH regular insulin, four times daily. Id.

3. On February 28, 2006, the plaintiff was transferred to the Sterling Correctional Facility ("SCF"). His insulin injections were changed to two injections daily. Id.

4. The plaintiff was assigned to a top bunk in spite of having advised the defendants that he was subject to seizures and possibly a coma because they had severely decreased his insulin. Id. at 3A.

5. On March 1, 2006, in an effort to reduce operating costs, SCF discontinued medical staffing and dispensation of medications from 8:00 p.m. until 6:00 a.m. Id. at 3-3A.

6. On March 3, 2006, the plaintiff fell from the top bunk. He could not move his hips, and he could not walk or stand. He was removed from his cell in a wheelchair; taken down three

2

flights of stairs; and transported to the Sterling Community Hospital in a prison van. There was only one correctional officer present during this entire time. Id. at p. 3A.

7. In spite of the plaintiff's insistence that he could not walk, crawl, or stand, the Sterling Community Hospital staff sutured his head, and he was returned to SCF. Upon his arrival at SCF, he was placed in a holding cell. Citing security concerns, security staff removed the only chair in the cell, and the plaintiff was forced to sleep sitting on a toilet seat. Id.

8. Several days later, the plaintiff was given an x-ray at SCF. He was diagnosed with two fractures of his pelvis. Defendant Fortunato advised the plaintiff that he needed an operation. Dr. Fortunato later decided that the plaintiff would not need an operation due to cost constraints and insisted that the plaintiff walk to stimulate healing and bone growth. The plaintiff was then provided crutches and a wheelchair. No follow up x-rays were made. Id.

9. The plaintiff's feet and legs were swollen to twice their normal size. Dr. Fortunato recommended that the plaintiff elevate his feet and legs to prevent blood clots, but the defendants did not provide any means to follow this order. Id.

10. The plaintiff had to depend on other inmates to push his wheelchair to medication lines and food service because the medical department denied him "a full time pusher." Id.

11. On May 4, 2006, Dr. Fortunato again decreased the plaintiff's insulin injections to once daily "in spite of the drastic weight loss and decreased vision due to diagnosed poor blood sugar control." Id.

12. Due to the improper healing of his pelvis, the plaintiff continues to suffer pain and discomfort; swelling of his feet, ankles, and legs; poor walking posture; and an inability to sleep lying flat. Id.

3

The Complaint asserts two claims for relief. Claim One alleges medical malpractice and deliberate indifference in violation of the Eighth Amendment based on the medical treatment plaintiff received after he fell off his bunk. Id. at p. 4. Claim Two alleges deliberate indifference in violation of the Eighth Amendment based on the medical treatment he received for his diabetes.[1] Id. at p. 5. The plaintiff seeks monetary damages. Id. at p. 8.

### III. ANALYSIS

This action is brought under 42 U.S.C. § 1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State, . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

### A. Claim One

Claim One alleges a violation of the Eighth Amendment based on the treatment plaintiff received after he fell off his bunk. Id. at p. 4. The defendants seek dismissal of Claim One on several bases. *Motion*, pp. 3-7.

### 1. Personal Participation

The defendants first argue that Claim One should be dismissed because the plaintiff has failed to allege that any of the defendants personally participated in the alleged constitutional violation. *Motion*, pp. 3-4. An individual cannot be held liable in a section 1983 action unless

---

[1]To the extent the plaintiff attempts to bring other claims, those claims are unintelligible and will not be recognized. See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991) (stating that "[t]he broad reading of the plaintiff's complaint does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based").

4

he caused or participated in an alleged constitutional violation. McKee v. Heggy, 703 F.2d 479, 483 (10th Cir. 1983). Respondeat superior is not within the purview of section 1983 liability. Id. In order for a supervisor to be liable under section 1983, there must exist a causal connection or an affirmative link "between the constitutional deprivation and either the supervisor's personal participation, his exercise of control or direction, or his failure to supervise." Butler v. City of Norman, 992 F.2d 1053, 1055 (10thCir. 1993); see also Rizzo v. Goode, 423 U.S. 362, 371 (1976). Without a showing of direct responsibility for the alleged violations, liability will not be imposed on a supervisory official. Id.

Claim One alleges in its entirety:

> At the time of the incident of claimant falling off his top bunk, with claimant in obvious excruciation of pain the defendants, acting individually or in concert with each other in allowing correctional officers to move the claimant in a wheelchair in a prison van to a local hospital with none of the defendants present is malpractice. A telephone consultation is not adequate. Claimant had a serious medical need. The defendants, acting together or individually showed a clear deliberate indifference to the serious medical need, later acknowleging [sic] the serious medical need and due to acts of malpractice failed to act.
>
> The actions of the defendants acting negligent and in a manner of malpractice with deliberate indefference [sic] to the medical needs of claimant, violated the claimant's 8th amendment right to the United States Constitution.
>
> Because the deliberate indifference caused claimant pain and injury, the defendant's [sic], at all times relevant to the complaint, are libel [sic].

*Complaint*, p. 4.

5

I construe Claim One to allege a violation of the plaintiff's Eighth Amendment rights based on the defendants' failure to have medical personnel available at the time of the fall and the defendants' failure to properly treat the plaintiff's injuries.

The Complaint does not contain any specific allegations from which to reasonably infer that Fortunato, Rittenhouse, or Webster were directly responsible for the lack of medical staffing at the time the plaintiff fell from his bunk. Nor does it contain specific allegations sufficient to show that Rittenhouse or Webster participated in the care of plaintiff's injuries after the fall.

The plaintiff does, however, allege that Dr. Fortunato personally participated in the treatment of his injuries. He alleges that Fortunato decided that the plaintiff needed an operation but changed his mind "due to cost constraints"; insisted that the plaintiff walk on his injuries; failed to provide follow up x-rays; and recommended elevation of the legs but failed to provide a means to accomplish the elevation. As a result, the plaintiff alleges that his pelvis healed improperly. Id. at p. 3A.

I respectfully RECOMMEND that the Motion be GRANTED insofar as it seeks dismissal of Claim One as against Rittenhouse and Webster for failure to allege personal participation of these defendants. I further RECOMMEND that the Motion be DENIED to the extent it seeks dismissal of Claim One as against Fortunato for failure to allege personal participation.

### 2. Failure to Allege Physical Injury

The defendants next argue that Claim One is barred because the plaintiff does not allege that he suffered a physical injury as required by the Prisoner Litigation Reform Act ("PLRA"). *Motion*, pp. 4-5. The PLRA provides in pertinent part:

> No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.

42 U.S.C. § 1997e(e).

The plaintiff alleges that as a result of improper medical treatment, his pelvis has healed improperly and that he "continues to suffer pain and discomfort, swelling of feet, legs and ankles, poor walking posture and inability to sleep lying flat." *Complaint*, p. 3A. These allegations are sufficient to meet the PLRA's requirement of a physical injury.

I RECOMMEND that the Motion be DENIED to the extent it seeks dismissal of Claim One for failure to allege physical injury.

### 3. Failure to State a Claim

Finally, the defendants argue that Claim One fails to state a claim for deliberate indifference. *Motion*, pp. 5-6, 9-10. A prison official's deliberate indifference to an inmate's serious medical needs violates the inmate's Eighth Amendment right to be free from cruel and unusual punishment. Estelle v. Gamble, 429 U.S. 97, 104 (1976). "This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care." Id. at 104-05. To establish a claim for deliberate indifference, a plaintiff must prove both an objective component and a subjective component.

The objective component is met if the inmate's medical need is sufficiently serious. Farmer v. Brennan, 511 U.S. 825, 834 (1994). A medical need is sufficiently serious "if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Hunt v. Uphoff,

7

199 F.3d 1220, 1224 (10th Cir.1999) (quoting Ramos v. Lamm, 639 F.2d 559, 575 (10th Cir. 1980)). The subjective component to a deliberate indifference claim is met if a prison official "knows of and disregards an excessive risk to inmate health or safety." Farmer, 511 U.S. at 837. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id.

The plaintiff alleges Dr. Fortunato knew of his pelvic fractures; decided the plaintiff needed an operation but changed his mind "due to cost constraints"; and instead insisted that the plaintiff walk on his injuries. In addition, he alleges that Dr. Fortunato failed to provide follow up x-rays and did not provide the plaintiff a means to elevate his the legs. He further alleges that due to the improper healing of his pelvis, he continues to suffer pain and discomfort; swelling of his feet, ankles, and legs; poor walking posture; and an inability to sleep lying flat. *Complaint*, p. 3A. These allegations are sufficient to allege deliberate indifference to a serious medical need. I RECOMMEND that the Motion be DENIED insofar as it seeks dismissal of Claim One for failure to state a constitutional claim.

### B. Claim Two

Claim Two alleges deliberate indifference in violation of the Eighth Amendment based on the treatment the plaintiff received for his diabetes. *Complaint*, p. 5. Claim Two states in its entirety:

> Defendant Fortunato, acting individually with NP Rittenhouse and PA Webster, showed a deliberate indifference to the needed medical treatment of claimant's type I diabetes when reducing insulin shots from five per day to one per day. On March 04, 2006, claimant suffered a serious seizure, falling from top bunk, causing injuries to head and pelvis. PA Webster experimented by prescribing diabetic medicine glucophage and one insulin shot daily, causing the sugar level to read 500+.

8

> On July 11, 2006, NP Rittenhouse prescribed insulin three times
> daily, which brought on improvement, Defendant Fortunato
> overrode the order to twice daily and claimant could only check
> blood sugar level three times per week. Defendants knew or
> should have known the claimant was a type I diabetic since 1970
> and that claimant's blood sugar could not be controlled with two
> insulin shots per day. Defendants had been advised that claimant
> was prone to have seizures due to diabetic condition. However,
> defendants refused to intervene when housing claimant to a top
> bunk on the third tier, showing a deliberate indifference to
> claimants [sic] medical needs.

*Complaint*, p. 5.

As a preliminary matter, I note that the Complaint does not allege that defendant Rittenhouse participated in any improper treatment of the plaintiff's diabetes. To the contrary, the only specific allegation made against Rittenhouse is that she *increased* the plaintiff's insulin to three injections per day "which brought on improvement." In addition, the only specific allegation against Webster is that he "experimented by prescribing diabetic medicine glucophage and one insulin shot daily, causing the sugar level to read 500+." This vague allegation is not sufficient to state a plausible claim that Webster knew of and disregarded a substantial risk to the plaintiff's health. I respectfully RECOMMEND that Claim Two be DISMISSED as to defendants Rittenhouse and Webster.

The defendants argue that Claim Two states only a disagreement between the plaintiff and his medical providers. *Motion*, pp. 7-9. The plaintiff has alleged more than a mere disagreement with Dr. Fortunato. He alleges that after suffering a diabetic seizure and falling from his bunk on March 4, 2006, and after being treated for the resulting injuries by Dr. Fortunato, on May 4, 2006, Dr. Fortunato "again decreased by insulin injections to once daily in spite of the drastic weight loss and decreased vision due to diagnosed poor blood sugar control."

9

*Complaint*, pp. 3A, 5. These allegations are sufficient to allege that Dr. Fortunato knew of and disregarded an excessive risk to the plaintiff's health. I RECOMMEND that the Motion be DENIED insofar as it seeks dismissal of Claim Two as to defendant Fortunato.

The defendants rely on documents attached to the plaintiff's initial complaint [Doc. #1-2] to support their argument that the plaintiff alleges only a disagreement. *Motion*, pp. 8-9. Specifically, they rely on responses by SCF medical personnel to the plaintiff's grievances. One such response informs the plaintiff that the greatest barrier to controlling his blood sugar is his diet, not the number of daily insulin injections. The opinions of SCF medical personnel raise factual matters potentially subject to dispute. At this stage of the case, I am examining the Complaint and its attachments to determine if the plaintiff has made specific allegations sufficient to plausibly support a claim for relief, which he has.

### C. Exhaustion of Administrative Remedies

The defendants assert that the plaintiff failed to exhaust his administrative remedies regarding most of the issues raised in the Complaint. *Complaint*, pp. 10-12. Because the plaintiff's claims challenge prison conditions, they are governed by the Prison Litigation Reform Act (the "PLRA"). 42 U.S.C. § 1997e(a). The PLRA provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

Id.

The Supreme Court has interpreted section 1997e(a) to require, prior to filing a lawsuit, that the inmate exhaust all available administrative remedies whether the inmate is seeking injunctive relief, monetary damages, or both. Booth v. Churner, 532 U.S. 731 (2001). The

Supreme Court has stated: "[W]e stress the point . . . that we will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise." Id. at 741 n.6.

The defendants assert that the grievances attached to the Complaint show that the plaintiff exhausted his claim regarding treatment of diabetes but not treatment of his injuries after the fall. The plaintiff alleges that he exhausted all of his administrative remedies, however. *Complaint*, p. 7. These allegations are sufficient to withstand a motion to dismiss. Jones v. Bock, 549 U.S. 199, 212 (2007). I respectfully RECOMMEND that the Motion be DENIED insofar as it seeks dismissal of Claim One for failure to exhaust administrative remedies.

### D. Qualified Immunity

The defendants assert that they are entitled to qualified immunity. Qualified immunity shields government officials sued in their individual capacities from liability for civil damages provided that their conduct when committed did not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In order for a right to be "clearly established" for purposes of assessing entitlement to qualified immunity, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." Anderson v. Creighton, 483 U.S. 635, 640 (1987) (citations omitted).

When analyzing the issue of qualified immunity, the court must first determine whether the plaintiff has sufficiently alleged violation of a statutory or constitutional right. If the plaintiff has asserted such a violation, only then does the court inquire whether the right was clearly established at the time of the violation. Wilson v. Layne, 526 U.S. 603, 609 (1999); Butler v. City of Prairie Village, Kansas, 172 F.3d 736, 745 (10th Cir. 1999).

I have determined that Claims One and Two sufficiently allege deliberate indifference to a serious medical need in violation of the Eighth Amendment as against defendant Fortunato. In 1976, the Supreme Court determined that a prison official's deliberate indifference to an inmate's serious medical needs violates the inmate's Eighth Amendment right to be free from cruel and unusual punishment. Estelle v. Gamble, 429 U.S. 97, 104 (1976). In 1980, the Tenth Circuit Court of Appeals held that the government has a constitutional obligation to provide inmates with "a level of medical care which is reasonably designed to meet the routine and emergency health care needs of inmates." Ramos v. Lamm, 639 F.2d 559, 574 (10th Cir. 1980). The plaintiff complains of deliberate indifference to his serious medical needs beginning in 2006. His rights under the Eighth Amendment were clearly established at that time. I respectfully RECOMMEND that the Motion be DENIED to the extent it asserts that the defendants are entitled to qualified immunity.

## IV. CONCLUSION

I respectfully RECOMMEND that the Motion be GRANTED IN PART and DENIED IN PART as follows:

GRANTED insofar as it seeks dismissal of Claims One and Two as against defendants Rittenhouse and Webster; and

DENIED to the extent it seeks dismissal of Claims One and Two as against defendant Fortunato.

FURTHER, IT IS ORDERED that pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have 10 days after service of this recommendation to serve and file specific, written objections. A party's failure to serve and file specific, written objections waives *de novo* review of the recommendation by the district judge, Fed. R. Civ. P. 72(b); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. In re Key Energy Resources Inc., 230 F.3d 1197, 1199-1200 (10th Cir. 2000). A party's objections to this recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review. United States v. One Parcel of Real Property, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated January 29, 2009.

BY THE COURT:

s/ Boyd N. Boland
United States Magistrate Judge